UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TROY M. CORDELL, JR.,

                              Plaintiff,

                                                                          DECISION AND ORDER

                                                                          05-CV-6703L

                              v.

VERIZON WIRELESS,

                              Defendant.
_____

      Plaintiff Troy Cordell ("Cordell") brings this action against his former employer, Verizon Wireless ("Verizon") alleging discrimination in employment on the basis of race pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the New York Human Rights Law, N.Y. Exec. Law §§290 et seq. ("NYHRL").

      Discovery is now complete, and Verizon moves for summary judgment dismissing Cordell's claims in their entirety (Dkt. #16). For the reasons that follow, Verizon's motion for summary judgment is granted, and the complaint is dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

      On March 30, 2003, Cordell was hired by Verizon as a Customer Service Specialist at Verizon's Customer Service Call Center in Rochester, New York.

In the fall of 2004, Cordell applied for the position of Store Manager in Verizon's Marketplace Mall retail location. Cordell was interviewed by Verizon District Manager Holly Storm ("Storm"), and Associate Director of Human Resources Luis Rivera ("Rivera"). Despite absenteeism issues in his Customer Service Specialist position for which he had been disciplined, Cordell was promoted to the Store Manager position, effective November 1, 2004.

On December 24, 2004, Cordell's mother called him and requested to replace one of her cellular phones because it had become water damaged, and because she wanted to upgrade to another phone. Cordell initially directed her to revisit the location where she purchased the phone. However, she called him later and related that she was dissatisfied with the service she had received there, and wanted him to personally assist her. Cordell instructed her to come to his store.

At the store, Cordell instructed a temporary employee to assist his mother. The temporary employee arranged for Cordell's mother to receive an early upgrade and an instant rebate, both of which required a manager's approval. Cordell used his manager code to authorize and approve the upgrade and rebate.

On or about October 11, 2004, Cordell had reviewed and signed an acknowledgment of his receipt and review of Verizon's Northeast Area Communications Stores policy manual. The policies include a provision ("Employee Accounts policy") that, "[u]nder NO circumstances is an employee . . . allowed to take any direct action on any VZW Cellular Service account listed under his/her personal name or family name (e.g. address change, bill payments, etc)." The policy further provides that a violation of the policy is a violation of Verizon's Code of Business Conduct, for which infractions can lead to disciplinary measures up to and including termination of employment.

On December 26, 2004, Eric McQuistion ("McQuistion"), the Assistant Operations employee responsible for conducting a daily audit of the use of discount and upgrade codes at Cordell's location, conducted an audit of the December 24, 2004 transactions. McQuistion observed that Cordell had utilized a manager's discount code to authorize an instant rebate. Because such rebates are rarely authorized and because McQuistion learned that the relevant account belonged to Cordell's mother, McQuistion reported to District Manager Storm that Cordell's authorization was potentially a violation of Verizon's Employee Accounts policy, and required follow-up.

Upon review of the transaction notes, Storm determined that Cordell had authorized an early upgrade and instant rebate for his mother, even though she was not eligible for them. Storm met with Cordell to discuss the transaction. Cordell admitted that the customer was his mother, and that he had "coached" the temporary employee through the entry of the transaction, with the use of his manager's code. Cordell told Storm that he authorized the rebate and upgrade based on his belief that his mother's account was "high value," and because it was necessary to keep her business. On December 30, 2004, Cordell sent an e-mail to Storm confirming his conduct, recognizing that he "made a bad busines [sic] code of conduct decision based apon [sic] this account belonging to a family member . . . I am aware of the policy. I fully understand and agree with the Verizon policies."

Storm determined that Cordell had violated Verizon's Employee Accounts policy, and that Cordell should have referred his mother to a different Verizon store or customer service department. Upon discussion of the matter with Rivera, the two concluded that Cordell's employment should be terminated, which was effected on January 5, 2005.

On or about July 15, 2005, Cordell filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been unlawfully terminated on the basis of his African-American race. On September 15, 2005, the EEOC issued a "no cause" finding and Right to Sue letter. Cordell filed the instant action on December 8, 2005, alleging discriminatory termination.

## DISCUSSION

### I. Summary Judgment in Discrimination Cases

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir. 1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

Cordell's claims of employment discrimination pursuant to Title VII and the NYHRL are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002). Once plaintiff has established a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext. *See St. Mary's Honor Center*, 509 U.S. 502, 508 (1993).

While granting Cordell the liberal interpretation and favorable inferences due to him as a nonmovant, I find that he has nonetheless failed to establish a *prima facie* case of discrimination, and/or to rebut Verizon's legitimate, nondiscriminatory reason for terminating his employment.

## II.     Cordell's Discriminatory Termination Claim

While conceding that he extended an upgrade and rebate to his mother, a clear violation of Verizon's explicit written policies, Cordell asserts that the true motivation behind Verizon's termination of his employment was discriminatory.

As an initial matter, Cordell has failed to submit any evidence establishing satisfactory job performance, or "circumstances giving rise to an inference of discrimination" that would support a *prima facie* case.

Moreover, even if Cordell were able to do so, he cannot rebut Verizon's legitimate, nondiscriminatory reason for terminating his employment: his admitted conduct in violation of Verizon's Employee Accounts policy. It is well-settled that employee misconduct is a legitimate, nondiscriminatory reason for the termination of employment. *See e.g.*, *Jones v. Yonkers Public Schools*, 326 F.Supp.2d 536, 53-544 (S.D.N.Y. 2004) (misconduct, poor performance, and violation of employer's rules and procedures are legitimate, non-discriminatory reasons for termination).

Cordell alleges that Verizon's explanation for his termination is pretextual, because similarly-situated Caucasian employees received more favorable treatment for policy violations. This allegation, however, is purely speculative. While Cordell identifies four Caucasian employees as "similarly-situated," and alleges that they were disciplined less severely for Employee Accounts policy infractions, Cordell has produced no evidence to support these allegations.[1] *See Tutko v. James River Paper Co., Inc.*, 1999 U.S. App. LEXIS 28455 at *4-*5 (2d Cir. 1999) (in order to evade summary judgment, "[a] plaintiff may rely only on admissible evidence": thus, "[s]ummary judgment against a plaintiff in an employment discrimination case is [in]appropriate if the plaintiff offers only 'unsupported assertions,' 'conjecture or surmise,' or 'conclusory statements' to support an essential element of his case"), *quoting Goenaga v. March of Dimes Birth Defects Found.*, 51

---

[1] In response to this motion, Cordell has submitted an affidavit which purports to assert new, previously undisclosed facts concerning the alleged comparators. However, the affidavit is insufficient to defeat summary judgment. To the extent that it presents relevant evidence, it flatly contradicts Cordell's prior deposition testimony concerning the grounds for his disparate treatment claim, and "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). *See also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony").

F.3d 14, 18 (2d Cir. 1995). To the contrary, one of the alleged comparators was not a manager, but an employee who had been supervised by Cordell. Cordell testified that when the employee requested authorization to issue a discount to the employee's sister, Cordell called his District Manager, Storm, for assistance and permission – something that Cordell, tellingly, did not do when he authorized a discount for his own family member a short time later. In short, Cordell cannot demonstrate that Verizon's enforcement of the Employee Accounts policy was inconsistent, and Rivera testified that of the six Employee Accounts policy violations of which he was aware, all six had resulted in terminations, including that of three African-Americans, two Caucasians, and one Hispanic employee.

Cordell's unsupported belief that his termination was discriminatory is further undermined by the fact that the persons who opted to terminate him were the same ones who had very recently promoted him to the Store Manger position. An employer's intent "must be evaluated by reference to the decision-maker actually ordering the adverse employment action," and in Cordell's case, Storm and Rivera were responsible for both the promotion and termination decisions within a matter of a few weeks. *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 89 (2d Cir. 2005). "[W]here the person[s] who made the decision to fire [were] the same person[s] who made the decision to hire, it is difficult to impute to [them] an invidious motivation that would be inconsistent with the decision to hire." *Schnabel v. Abramson*, 232 F.3d 83, 91 ($2^d$ Cir. 2000).

In light of Cordell's admitted misconduct and the lack of evidence indicating racial animus on the part of Verizon, Cordell cannot demonstrate that Verizon's reason for terminating his employment was pretextual. *See generally DeLuca v. Allied Domecq Quick Service Restaurants*,

2006 U.S. Dist. LEXIS 39261 at *27 (E.D.N.Y. 2006) (an employer may undertake an adverse employment action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"). Accordingly, Cordell's claim of discriminatory discharge must be dismissed.

## CONCLUSION

For the foregoing reasons, Verizon's motion for summary judgment (Dkt. #16) is granted and plaintiff's complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 5, 2008